UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

UNITED STATES OF AMERICA,

-V-                                               CASE NO. 18-CR-62 (GTS)

CODY CHILDRESS                    Defendant.
─────────────────────────────────────

**SENTENCING MEMORANDUM**

DATED:      July 16, 2018                 Respectfully submitted,
            Syracuse, New York            OFFICE OF FEDERAL PUBLIC DEFENDER


                                          Lisa A. Peebles, Esq.
                                          Federal Public Defender
                                          Bar Roll No. 507041
                                          Office of the Federal Public Defender
                                          4 Clinton Square, 3rd Floor
                                          Syracuse. New York 13202
                                          (315) 701-0080

**PRELIMINARY STATEMENT**

Cody Childress is scheduled for sentencing on August 2, 2018 before the Honorable Glen T. Suddaby in Syracuse, New York, for the offenses of receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(b)(1); 2252A(a)(5)(B) and (b)(2), respectively.

A Presentence Investigation Report (hereinafter referred to as "PSR") was prepared by the United States Probation Department in anticipation of his sentencing.  According to the PSR, his total offense level is 32 and his Criminal History Category is I, which results in a guideline imprisonment range of 121 to 151 months. The statutory mandatory minimum sentence is 60 months and based upon the relevant statutory factors applicable in this case, the defense maintains a sentence of 60 months is more than sufficient to satisfy the statutory purposes of punishment.

**BACKGROUND AND OFFENDER CHARACTERISTICS/OFFENSE CONDUCT**

The Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005) held that the guidelines are only advisory. *Id.* at 258.  In determining a sentence, a Court must not only consider guideline calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. § 3553 (a)(2),  as well as, the Defendant' unique circumstances.  *See* § 3553 (a).

The Sentencing Reform Act provides, in part, that:

The Court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in Paragraph (2) of this subsection.  The Court, in determining the particular sentence to be imposed shall consider:

    i.    The nature and circumstances of the offense and the history and characteristics of the defendant; [and]

    ii.    The need for the sentence imposed;

        (1)    To reflect the seriousness of the offense, to promote respect for the law, and to provide just  punishment for the offense;

        (2)    To attend adequate deterrence to criminal conduct;

        (3)    To protect the public from further crimes of the defendant; and

> (4)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a).

The defense is asking this Court to depart below the advisory range and impose a non-guideline sentence.  A careful consideration of the totality of relevant circumstances surrounding the facts of the present case should lead this Court to conclude that such a sentence is warranted.

Cody Childress accomplished a lot throughout his young life. His ambition is remarkable and talents are many. He maximized his ability in school, work, and for the good of his community. In 2011, he graduated from James Madison University with a bachelor's degree in biology and a minor in human science. Following his undergraduate work, he attended Life University in Georgia and graduated with a Doctor of Chiropractic degree in 2015. Cody was inspired to become a chiropractor by his mentor, Christopher Brown, DC whom Cody worked for throughout his four years in high school. Doctor Brown described Cody as an "exemplary employee and mature beyond his years."

Cody grew up in Tazewell, Virginia, and enjoyed an idyllic childhood with his younger sister. His mother and father were nurturing hardworking role models and Cody developed his strong work ethic from watching them.  His father worked construction and his mother was a chiropractic assistant who first introduced Cody to the profession, and to Dr. Brown. His parents describe Cody as always having been "mannerly and polite to everyone." His father states, "raising children is a very hard task, but Cody made it a very enjoyable time in our lives. Cody has never been in any type of trouble in his life. . . Cody has always pushed himself to achieve the highest standards in whatever he sets his mind to do." His parents glow with pride when they talk about Cody but they are now also overwhelmed with sadness for him and his future. They remain supportive of their son.

In addition to his hardworking nature, Cody is incredibly thoughtful to others. His partner of six years describes him as a "kind-hearted, intelligent, and hardworking entrepreneur looking to make Syracuse a better place."   If he sees someone in need, he will place other's interests above his own. He is also a community activist. During the short time he lived in the Syracuse area, he became an engaged board member of the Rosamond Gifford Zoo and he was personally involved with developing an animal clinic zoo expansion. He also started tutoring biology students at SUNY Morrisville. Cody has always immersed himself in community affairs and promoted organizations to help others. While attending James Madison University, he was the initializing member of the HIV/AIDS awareness group.

In addition to his family and friends, Cody's patients also describe him as a kind and generous person. Several of his patients remarked about his strong sense of humor and his personable nature when he is treating them. Cody's patients miss him and some have even befriended him after his arrest.  There is no question that Cody's thoughtful personality and work ethic will help him overcome obstacles upon his release from prison.

Cody demonstrated his ability to utilize his time wisely while under pretrial supervision. He wore an ankle-monitoring device for more than one year and there were never any violations of his conditions of release. He worked closely with his supervising officer to make sure he was compliant in all respects throughout his supervision. For several months, Cody continued to work on patients out of his house while, at the same time, he worked on closing his business and taking care of his financial obligations. He also spent time writing a science fiction novel, staying physically active, and tackling the household chores. Knowing he was facing a minimum of five years in prison, Cody agreed it would be best if he were remanded following his guilty plea. During

4

the past four months, he has been sharing a one-room dorm with 10 fellow inmates. Although a difficult circumstance, he has been able to provide advice and guidance to other inmates.

In this case, Cody understands the gravity of downloading child pornography and it is without question something he deeply regrets. His behavior began four years ago when he was introduced to child pornography through someone he met online. Viewing child pornography was not something Cody did every day. He did it with irregularity and did not actively share images with others. His act of sharing was passive through a file sharing program. Cody is ashamed of what he did and he knows it was wrong.  According to his close friends and family members, Cody's conduct in this case "most definitely does not reflect his character."  He has worked toward forgiving himself and looking forward to his future. He knows he will never engage in this type of activity again.

Beyond imprisonment, Cody has felt the consequences of his actions through the loss of his practice, home, and partner.  At the age of 27, Cody was a Doctor of Chiropractic care with a thriving practice in Cazenovia.  Not only has he lost this practice, but he also lost his chiropractic license. Upon losing his business, he and his partner of six years, had to sell their Jamesville home. Cody's conduct, and the resulting consequences, have strained his relationship with his partner. These consequences, along with a 60 month term of imprisonment, will sufficiently satisfy the 18 U.S.C. § 3553(a) factors.

## SENTENCING GUIDELINES ENHANCEMENTS RESULT IN A GUIDELINE RANGE THAT IS INCOMPATIBLE WITH 18 U.S.C. § 3553(a) FACTORS

In light of *Booker*, many of the sentencing enhancements set forth in U.S.S.G. § 2G2.2 are now being rejected by many Federal Courts.  This is because the sentencing enhancements used to achieve the advisory guideline range under § 2G2.2 are not the product of any careful study or empirical data.   The Sentencing Commission has the capacity Courts lack to base its

determinations on empirical data and national experience, guided by a professional staff with appropriate expertise. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007; *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that even though the Guidelines are advisory rather than mandatory, they are [mostly] … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

When Guidelines are not based on an empirical approach, but are instead guided by statutory directives, such as § 2G2.2 enhancements, a Court is not presented with the ordinary case in which the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. *See e.g., Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n. 2 (noting that not all Guidelines are tied to empirical evidence). In these cases, it is not an abuse of discretion for a District Court to conclude when sentencing a particular defendant that application of the guideline yields a sentence greater than necessary to achieve § 3553(a)'s purposes even in a mine-run case. *Kimbrough*, 552 U.S. at 109.

In 2013, the Sentencing Commission published a report on the child pornography guidelines. *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012)* [hereinafter, "C.P. Report"]. In its report, the Commission stated, "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." C.P. Report at ii.[1]

In *United States v. Dorvee*, a defendant pled guilty to distribution of child pornography and sentenced to a term of 240 months, the statutory maximum. *United States v. Dorvee*, 616 F.3d

---

[1] As a result of recent changes in internet technology "four of the six sentencing enhancements in § 2G2.2, those relating to computer usage and the type and volume of images possessed by offenders, which together account for 10 offense levels, now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *C.P. Report at iii.*

174, 178 (2d Cir. 2010).  The Sentencing Court appeared to be "convinced that [the defendant] was a 'pedophile' likely to engage in sexual conduct with a minor." *Id.* at 183.  In vacating the sentence, the Second Circuit found and identified "certain serious flaws" in § 2G2.2. *Id.* at 182; *see also United States v. Jenkins,* 854 F.3d 181, 188 (2d Cir. 2017).  Specifically, the Court found that applying enhancements that are inherent to the crime and, consequently, apply to the vast majority of defendants, such as § 2G2.2 enhancements, "eviscerates the fundamental statutory requirement in § 3553(a)." *Id.* at 187.  *Dorvee* encouraged District Judges to recognize their broad discretion in sentencing an offender looped into the § 2G2.2 guideline, calling it an eccentric guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results. *Id.* at 188.  Similarly, in *United States v. Tutty*, the Second Circuit reversed a sentence that followed § 2G2.2 enhancements resulting in a sentence of 168 months for a first time offender. *United States v. Tutty*, 612 F.3d 128, 129-130 (2nd Cir. 2010).  The District Court failed to recognize its authority to depart from the guideline range of imprisonment based on the policy considerations. *Id.* at 129.

Multiple enhancements were applied to Cody's offense that adjusted his total offense level upwards as follows:

1. Two levels for material involving children under the age of 12, pursuant to § 2G2.2(b)(2) (PSR ¶ 19 );

2. Four levels for material involving sado-masochistic images, pursuant to § 2G2.2(b)(4) (PSR ¶ 20);

3. Two levels for use of a computer, pursuant to § 2G2.2(b)(6) (PSR ¶ 21); and

4. Five levels pursuant to 2G2.2(b)(7)(A) for more than 600 (51 videos) images.

These enhancements were addressed in both *Dorvee, Tutty,* and *Jenkins* recognizing that they apply in virtually every case. *Dorvee,* 604 F.3d at 96; *Tutty,* 612 F.3d at 132; *Jenkins,* 854

F.3d at 188.  The Sentencing Commission designates possession of child pornography at a base offense level of 22, lower than the base offense level for other serious crimes, such as production of child pornography, which has a base offense level of 32.  However, applying the § 2G2.2 sentencing enhancements, which the Court in *Dorvee* and *Tutty* found worrisome, raise Cody Childress' total offense level to 32, punishing him as severely as a defendant with higher culpability.

## LOW RISK OF RECIDIVISM AND  LACK OF DANGER TO THE COMMUNITY

Cory's low risk of recidivism is illustrated through his cooperation with authorities prior to his arrest along with his compliant conduct while on pretrial release for more than one year.

The United States Sentencing Commission has expressed the "likelihood of recidivism and future criminal behavior must be considered" to protect the public.  U.S. SENTENCING GUIDELINES MANUAL, Chapter Four, Introductory Commentary.  The Commission has found that offenders without prior arrests have the lowest recidivism rate of all other offenders.  *See* U.S. Sentencing Commission, *Recidivism and the "First Offender"* 13-14 (May 2004) [hereinafter "Recidivism Report"].[2]  Courts have similarly reasoned that incarceration would have a greater significance for a defendant with no incarceration history.  *See United States v. Baker*, 445 F.3d 987 (7th Cir. 2006).  In *Baker*, the Seventh Circuit affirmed a below guideline sentence for a possessor of child pornography where the lower court took into account the defendant's lack of criminal history, [and] his relative young age."[3]  *Baker* at 992.  The Court found "consideration of

---

[2] Recidivism rate for defendants with no prior arrests is 6.8%.  *See Recidivism and the "First Offender"*, 14 available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf.  However, the re-conviction recidivism rate for these offenders is 2.5%.  *Id*.  Reconviction recidivism rates "limit[] recidivism to the first reconviction during the two year follow-up period."  *Id*. at 13.

[3] Additionally, the Court noted as significant, "the District Court's finding that a prison term would mean more to [the defendant] than to a defendant who had previously been imprisoned."  *Baker* at 992.

this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment,' and 'adequate deterrence[.]'" Id. (quoting 18 U.S.C. § 3553(a)(2)(A)(B)).

Cody Childress' criminal history score is zero because he has never been convicted of any offense, nor has he ever been incarcerated, and he has no prior arrests. He was on pre-trial release for over a year pending his guilty plea in this case and remained compliant in every respect while on home confinement. Courts have considered a defendant's good behavior while under pre-trial supervision in determining the appropriate sentence. See *United States v. Munoz-Nava*, 524 F3d 1137 (10th Cir. 2008)(in heroin distribution case where guidelines were 47-56 months, district court court's sentence of one year and one day in prison to be followed by one year home detention was reasonable in part because of defendant's behavior while on pre-trial release for 1 ½ years); *United States v. Baker*, 502 F3d 465 (6th Cir 2007)(below guideline sentence of probation with one year house arrest was proper in part because defendant behaved exceedingly well" while under supervision) As per the Sentencing Commission, these conditions give him the lowest rate of recidivism. *See Recidivism Report* at 14.

In this particular case, a guideline sentence is not necessary to protect the public from further crimes of the defendant. The defendant submits that a non-guideline sentence would "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(b)(c).

## CONCLUSION

The recommended guideline range is excessive in light of Cody Childress' exemplary work history, lack of criminal history, and his over-inflated offense level based upon flawed guideline enhancements. The defense submits that a downward departure or variance is warranted in this case particularly because of the low risk of recidivism. We respectfully request that this Court impose the minimum sentence permitted by law. Such a sentence in this case would be sufficient,

but not greater than necessary, to achieve the statutory purposes of punishment, as required by 18

U.S.C. § 3553(a) and in light of *United States v. Booker*, 543 U.S. 220 (2005).

DATED:      July 16, 2018            */s/*

>                        LISA A. PEEBLES, ESQ.
>                        Federal Public Defender
>                        Bar Roll No. 507041
>                        OFFICE OF FEDERAL PUBLIC DEFENDER
>                        4 Clinton Square, 3rd Floor
>                        Syracuse, New York   13202
>                        (315) 701-0080

cc:     Geoffrey Brown, Esq., AUSA
        Jeffrey Loftus, USPO
        Cody Childress